UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-227-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DEMYIA PORTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for compassionate release, filed by the Defendant, Demyia Porter ("Porter"). Record Document 82. The Government does not oppose Porter's motion for release. Record Document 84. For the following reasons, Porter's motion is granted.

**I. Background**

Porter pled guilty to conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine. Record Document 1. In June of 2019, he was sentenced to serve 51 months' imprisonment, with credit for time served since August of 2018, and five years of supervised release. Record Document 78. He was designated to MCFP- Springfield, a federal medical center. Record Document 82. His projected release date is June 3, 2021. Id.

Due to COVID-19, Porter seeks a modification of his term of imprisonment to allow him to be released on home confinement, pursuant to 18 U.S.C. § 3582(c). The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the

novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus. In light of this pandemic, the President of the United States has declared a national emergency and many states have declared public health emergencies. The CDC and health authorities have strenuously recommended social distancing, the use of face masks, and frequent hand washing as the best means of limiting community spread of the virus.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing. Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home release." Pursuant to that provision of the CARES Act, United States Attorney General William Barr issued an April 3, 2020, memorandum instructing the Bureau of Prisons ("BOP") to maximize transfer to home confinement of "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/coronavirus (last visited 7/13/2020). The April 3 memo urged the BOP to undertake its review urgently and assess inmates with high risk factors for COVID-19 who would be appropriate candidates for release. If they are deemed good candidates, the Attorney General instructed the BOP to immediately process the

2

respective inmates and to immediately transfer those inmates to their homes, after a fourteen-day quarantine. The BOP responded to confirm the urgency of the situation and announced that it is reviewing all inmates who satisfy the Attorney General's criteria for release. It has committed additional resources to complete this task as quickly as possible.

In this case, Porter suffers from a variety of serious medical conditions that place him at high risk for contracting or becoming severely ill from COVID-19.[1] Of greatest significance is his kidney disease; he has end-stage renal disease and requires five hours of dialysis three days per week. Porter needs a kidney transplant, but he submits that he cannot get evaluated, or at least has not been evaluated, for a transplant while in BOP custody. He also has Type 2 diabetes. In addition to those two conditions, Porter suffers from anemia, diabetic neuropathy, secondary hyperparathyroidism, vitamin D deficiency, phantom leg syndrome, hypertension, and vein disorder. He has had three amputations, various skin grafts, and removal of his gall bladder. Record Document 82, p. 2. Aside from his own medical issues, Porter submits that within his facility at MCFP-Springfield, there is no ability to socially distance and that he is among the most vulnerable population of inmates. Finally, he asserts that he has been a model inmate with a clean disciplinary record. In sum, Porter argues that his significant medical conditions, the COVID-19 pandemic, and the living conditions in which he is housed constitute extraordinary and

---

[1] Porter's filing of this motion is deemed a limited waiver of his right to confidentiality in his medical records.

compelling reasons to warrant his release from BOP. He asks that his sentence be modified to allow him to serve the remainder of his sentence on home confinement.

The United States does not dispute the severity of Porter's medical condition, nor does it object to his request for release.

II. **Law and Analysis.**

  A. Exhaustion of Remedies

Porter has filed his motion for a sentence modification under the First Step Act of 2018. He asks the Court to grant him compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[2] This allows for the modification of a term of imprisonment upon a finding that certain extraordinary and compelling reasons warrant a reduction in an

---

[2] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other. The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population. The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement. Thus, home confinement determinations rest with the BOP.

In this case, Porter seeks judicial relief under 18 U.S.C. § 3582, which permits the district courts to reduce a prisoner's term of imprisonment under certain circumstances. Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2).

inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction . . .
> > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above. However, as the statute makes plain, prior to filing motions for release in the district court, a prisoner must first

exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of thirty days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). The administrative-exhaustion provision is set out in mandatory terms—the district court can modify a sentence only after the defendant has exhausted administrative remedies.

Here, Porter has fully exhausted his claim. He filed a request with the MCFP-Springfield warden, and the warden denied his request on May 5, 2020. Thus, the Court has the statutory authority to modify his sentence under § 3582 and will now turn to the next step of the inquiry.

B. Extraordinary and Compelling Reasons

The Court finds that, based on the reasons below, Porter has demonstrated extraordinary and compelling reasons warranting his release. Section 3582(c)(1)(A) permits a reduction in Porter's term of imprisonment, subject to consideration of the § 3553(a) factors, if he exhausts his remedies and the Court determines that extraordinary and compelling reasons warrant a reduction. The reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and

compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (A) defendant's medical condition;[3] (B) defendant's age;[4] (C) family circumstances;[5] or (D) other reasons. U.S.S.G. § 1B1.13, cmt. n.1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D).

The Court finds that Porter satisfies at least one of these provisions, but arguably two. First, it is conceivable that his circumstances may satisfy Application Note 1(A) (the

---

[3] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, App. Note 1(A).

[4] Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, App. Note 1(B).

[5] Family circumstances require the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, App. Note 1(C).

7

medical condition prong of compassionate release) which requires that he be suffering from a serious medical condition which substantially diminishes his ability to provide self-care in the prison environment and from which he is not expected to recover. The Court understands that the MCFP-Springfield warden denied Porter's request for release, despite his chronic medical conditions, because he is not disabled, is capable of "limited self care," and needs no assistance with activities of daily living. Record Document 82-2. However, that statement alone does not necessarily disqualify Porter from satisfying Application Note 1(A), as the warden did not address whether Porter's medical issues "substantially diminish" his ability to provide self-care within the prison facility. Particularly, the Court notes the dialysis Porter requires for fifteen hours each week just to manage his kidney disease, a disease from which he will not recover without a transplant.

Nonetheless, even if Porter's end-stage renal disease does not qualify him for release under the medical condition prong of Application Note 1(A), he certainly has presented evidence of extraordinary and compelling reasons to modify his prison sentence pursuant to the catchall provision of Application Note 1(D). As previously stated, this category allows release under extraordinary and compelling circumstances "as determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D). In addressing this language, a sister court in the Eastern District of Louisiana reasoned,

> [T]he Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a

> term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been recognized by many courts. See United States v. Perdigao, 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).
>
> Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. See, e.g., United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). These district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive. See id. ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); United States v. Cantu, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

United States v. Mazur, 2020 WL 2113613, *2 (E.D. La. May 4, 2020). This reasoning is well-founded and persuasive. The Court agrees that the policy statement provides a helpful framework for compassionate release decisions, but it is not conclusive given the recent statutory changes. Thus, the Court finds that it has the power to determine whether, in the instant case, Porter has presented extraordinary and compelling reasons to warrant his release. This assessment, of course, must also take into account the § 3553(a) factors and a determination of whether Porter poses a danger to the safety of any other person or the community.

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. However, Porter has presented the Court with convincing reasons wholly specific to him, his medical condition, and the conditions of confinement he is experiencing.

Porter alleges he is particularly susceptible to suffering severe illness from COVID-19 because of his litany of serious medical conditions. The CDC guidance currently states that individuals who suffer from chronic kidney disease are at an elevated risk of severe illness with COVID-19. See Ctr. for Disease Control and Prevention, *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 13, 2020). Not only does Porter suffer from a chronic kidney condition, he also has Type 2 diabetes, which the CDC has identified as a condition placing him at an elevated risk of serious illness. See id. Thus, Porter has two conditions which independently put him at a higher risk for serious illness. Further, the CDC has indicated that those with hypertension, like Porter, "might be at an increased risk" for serious illness. Id. The Court finds that based on these three medical conditions specifically identified by the CDC, Porter has satisfied his burden of establishing that his medical

condition constitutes extraordinary and compelling circumstances.  Significantly, Porter's continued incarceration prevents him from being evaluated for a much-needed kidney transplant.  Thus, an evaluation for a potentially life-saving medical procedure is not even being discussed at this time.  The Court concludes that Porter has presented evidence of extraordinary and compelling circumstances warranting his release.

The Court must now determine whether Porter presents a danger to the "safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

As discussed above, Porter engaged in a conspiracy to distribute cocaine.  This is plainly a very serious offense.  However, the conspiracy involved no weapons and the defendants engaged in no violence, which is fairly uncommon in drug cases in this Court's experience.  Further, the presentence report established that it was Porter's co-defendant and girlfriend, Naquita Graves, who arranged and facilitated the drug transaction (picking up cocaine in Texas for subsequent distribution in Mississippi), and that Porter was accompanying her on the drive to and from Texas.  Record Document 70.  Graves admitted she organized the trip and the drug deal itself, and that she asked Porter to join her.  Id.  Graves expected to be paid $5,000 for the trip, but nothing ever revealed to what extent, if any, Porter would profit.  Id.  Based on these circumstances, Porter was

assigned a minor participant role and received a two level reduction in his offense level. Id. At the time of sentencing, Porter was a criminal history category III, however, that category overstated the seriousness of his prior criminal conduct. Id. Indeed, those points stemmed from two shoplifting offenses—one in 2000 and the other in 2007—resulting in four points and a criminal history category III. Id. The Government does not assert that Porter would pose a danger to himself, any other person, or the community if released. Taking these details into account, the Court finds that the § 3142(g) factors support Porter's release.

The Court must next consider the 18 U.S.C. § 3553(a) factors, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[6] (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a). In the context of compassionate release motions, other courts are also considering the risk of recidivism the defendant poses, the time remaining on his

---

[6] This factor has already been addressed above and supports release.

12

sentence, the quality of his release plan, and the impact of the BOP's efforts to maintain the safety of inmates.

Porter has less than one year remaining on his sentence, according to the BOP's calculations, and his projected release date is June 3, 2021. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited July 13, 2020). The time he has already served in prison has achieved much of the original sentence's purpose in terms of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and providing a deterrent effect. A reduction in his sentence will not override the punishment he has already been subjected to, nor will it eradicate the effects of the Court's original sentence.

The Court is concerned with Porter's access to medical treatment while in BOP custody. Section 3553(a)(2)(d) instructs a court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(d). Porter submits, and the Government does not dispute, that he has not been evaluated for a much-needed kidney transplant. Porter is in need of a sentence that will allow him an opportunity to seek needed medical treatment.

The Court recognizes the possibility of sentencing disparities.[7] However, to the extent a disparity would be created, the Court must adhere to the independent nature of

---

[7] The Court is not convinced a sentencing disparity would be created between Porter and his co-defendant, Graves, as Graves was undeniably more culpable than Porter, she was not deemed a minor participant, and she was sentenced to a longer term of

a review for compassionate release. Hence, while the Court strives not to create unwarranted sentencing disparities, it is nonetheless obligated to independently evaluate each case presented to it for consideration.

Lastly, Porter states that he has maintained a clean disciplinary record while in prison and has been enrolled in the RDAP program. Porter also notes that he still has a five year term of supervised release to complete, such that if he reoffends, the Court could send him back to prison.

On balance, considering the Court's familiarity with all relevant facts of this case, the Court finds the § 3553(a) factors support Porter's request for compassionate release. He can be placed on home confinement at the home of his mother in Canton, Mississippi. MCFP–Springfield staff have requested they be given at least thirty days before Porter's release so they can coordinate with a dialysis center and other caregivers in the Canton area. In order to ensure continuity of care, such a request will be honored.

### III. Conclusion

For the foregoing reasons, Porter's motion for compassionate release [Record Document 82] be and is hereby **GRANTED**. The remainder of his sentence is hereby modified to be served on **home confinement** subject to the following conditions:

---

imprisonment than Porter. In addition, the BOP's projected release date for Graves is not until September 9, 2022. Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc (last visited July 14, 2020).

1. Porter's original term of supervised release of five years and all original conditions thereof [Record Document 78] are not affected by this ruling.

2. Execution of the Court's order releasing Porter on home confinement is **STAYED** until **August 19, 2020** to allow the Bureau of Prisons and the United States Probation Office the opportunity to arrange for Porter's release and ongoing medical care.

3. An amended judgment will be entered separately to reflect the amended sentence and to set forth all conditions of supervision that will apply to Porter.

4. The Clerk of Court shall provide a copy of this ruling to the Probation Office and MCFP-Springfield.

**THUS DONE AND SIGNED** this 20th day of July, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE